IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANE DOE (J.L.K.), | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-24-3774 |
| CHOICE HOTELS INT'L, INC., et al., | * | |
| Defendants. | * | |
| | * | |

***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Choice Hotels, International, Inc. ("Choice" or "Choice Hotels")'s Motion to Transfer Venue or, in the Alternative, to Dismiss (ECF No. 12) and Defendant NB&J LLC's Motion to Dismiss (ECF No. 30). No hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant each Motion as it relates to transfer, decline to reach Defendants' Motion to Dismiss, and transfer this case to the District of Idaho.

## I.    BACKGROUND

**A.    Factual Background**[1]

This action arises from allegations that Choice Hotels and their franchisees (NB&J LLC, Gill & Banga, LLC, Lali Gill, Jaswinder Lal, Balwinder Gill, and Palkuar Gill (collectively "Franchisee Defendants")) knowingly benefitted from sex trafficking

---

[1] Unless otherwise noted, the Court takes the following facts from Plaintiff's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

enterprises. Plaintiff Jane Doe alleges at numerous instances between January 2012 and December 2014, she was a victim of unlawful sex trafficking at two hotels in Boise, Idaho which were owned, operated, and controlled by the Defendants. (Compl. ¶¶ 29–37, ECF No. 1). This trafficking occurred "an incalculable number of times at the Subject Choice Hotels Locations[,]" and, as Doe contends, was facilitated by the Defendants. (Id. ¶¶ 36–37).

Sex trafficking is a nationwide public health crisis which has reached epidemic proportions. (Id. ¶ 4). According to Doe, Choice has long known that trafficking is a problem at its hotels, including specifically the two Boise, Idaho locations at issue. (Id. ¶¶ 54–64, 65–70). Doe argues the "widely known" relationship between the hotel industry and sex trafficking, combined with the occurrence of sex trafficking at Choice Hotels locations nationwide and the two subject Choice Hotels locations in Boise, Idaho, provided Defendants with actual, or at the very least constructive, knowledge of Doe's trafficking between January 2012 and December 2014. (Id. ¶¶ 75–99).

Doe further alleges Defendants continued renting rooms to individuals which it knew or should have known were engaged in sex trafficking, which Doe argues amounts to maintaining an ongoing business relationship to facilitate the traffickers' illegal activities. (Id. ¶ 100). Doe alleges that Defendants received a financial benefit through the revenue and royalties secured by renting rooms to Doe's traffickers. Doe argues these activities violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, et seq, which provides victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking and those who financially benefit from participation

2

in a venture that they knew or should have known engages in criminal sex trafficking. (Id. ¶¶ 5–6).

### B. Procedural History

On December 30, 2024, Plaintiff Jane Doe filed a complaint with this Court, alleging that: the Franchisee Defendants are liable as perpetrators of sex trafficking within the meaning of 18 U.S.C. § 1591, thus violating 18 U.S.C. § 1595(a) (Count 1); all Defendants knowingly benefitted from participation in a venture that they knew or should have known was engaged in commercial sex trafficking, thereby violating 18 U.S.C. § 1595(a) (Count 2); and the Franchisor Defendants are vicariously liable for the TVPRA violations that occurred at its franchises (Count 3). (Compl. ¶¶ 108–120). Doe seeks monetary damages, punitive damages, attorney's fees, and costs. (Id. at 46).[2]

Defendant Choice Hotels filed a Motion to Transfer or, in the Alternative, to Dismiss on February 20, 2025. (ECF No. 12). Doe filed an Opposition on March 6, 2025 (ECF No. 17), and Choice filed a reply on March 20, 2025 (ECF No. 23). Defendant NB&J LLC filed a Motion to Dismiss on May 20, 2025. (ECF No. 30). Doe filed an Opposition on June 3, 2025. (ECF No. 31). To date, NB&J has not filed a reply.

---

[2] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

## II.     DISCUSSION

A.     <u>**NB&J's Motion to Dismiss for Lack of Personal Jurisdiction**</u>[3]

The Court will first analyze NB&J's challenge to the Court's personal jurisdiction "because the dismissal of a case on an issue relating to the dispute, such as a failure to state a claim, is improper without resolving threshold issues of jurisdiction, including personal jurisdiction." <u>Hardwire, LLC v. Ebaugh</u>, No. CV JKB-20-0304, 2021 WL 3809078, at *4 (D.Md. Aug. 26, 2021) (quoting <u>Sucampo Pharms., Inc. v. Astellas Pharma, Inc.</u>, 471 F.3d 544, 548 (4th Cir. 2006)). NB&J argues this Court lacks personal jurisdiction over it because Doe's claims do not "arise out of or relate to" NB&J's contacts with Maryland. (Def. NB&J Mem. L. Supp. Mot. Dismiss ["NB&J Mot."] at 2–3, ECF No. 30-1). For the reasons below, this Court agrees with NB&J.

Personal jurisdiction may be established through one of two avenues. If the defendant's contacts with the forum state form the basis for the suit, they may establish "specific jurisdiction." <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 397 (4th Cir. 2003). If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state. <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 318 (1945).

---

[3] Choice is a Delaware corporation with its principal place of business in Rockville, MD. As such, Choice does not dispute that it is subject to general personal jurisdiction in the District of Maryland.  See (Choice Hotels Mem. L. Supp. Mot. Transfer or Dismiss at 14, ECF No. 12-1); <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 92–93 (2010).

As a preliminary matter, NB&J contends, and Doe does not dispute, that it is not subject to general personal jurisdiction in Maryland. (NB&J Mot. at 24–25; Pl's. Resp. to NB&J Mot. Dismiss ["Opp'n NB&J Mot."] at 19 n.22, ECF No. 31). As such, any jurisdiction this Court has over NB&J must be exercised through this Court's specific personal jurisdiction. Absent a federal statute specifying different grounds for personal jurisdiction, federal courts may exercise jurisdiction in the manner provided by state law. Fed.R.Civ.P. 4(k)(1)(A). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst, 334 F.3d at 396. The parties agree that personal jurisdiction is authorized under the Maryland Long-Arm statute, and thus the statutory inquiry merges with the constitutional one. (Opp'n NB&J Mot. at 19; NB&J Mot. at 24).

To determine whether specific personal jurisdiction comports with due process, a court must consider "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

Here, NB&J does not dispute that it has purposefully availed itself of the privilege of conducting activities in Maryland. (NB&J Mot. at 25).[4] Rather, it argues the claims in the present suit do not "arise out of or relate to" its contacts with Maryland. (Id. at 26). Doe, in contrast, argues that (1) her beneficiary liability claim against NB&J has a clear connection to Maryland; (2) the venture which forms the basis of her § 1595(a) claim against NB&J has a connection to Maryland; and (3) NB&J's participation in these ventures occurred in part in Maryland. (Opp'n NB&J Mot. at 24–25). The Court will address each argument in turn.

Doe argues NB&J's Maryland contacts "relate to the 'knowingly benefitted' element [of her TVPRA beneficiary claim]." (Opp'n NB&J Mot. at 24). In Doe's view, a core element of her claim that Choice and NB&J violated § 1595(a) includes the allegation that NB&J knowingly received a benefit from renting rooms to Doe's traffickers. (Id.). Doe argues this benefit has a clear connection to Maryland, because traffickers' payments for room rentals were processed through Maryland systems and Choice accepted payments for some rooms from Maryland. (Id.).

The Court finds that Doe's allegations are plainly contradicted by the model franchising agreement. Doe cites to multiple provisions of Choice's model franchising agreement in support of her arguments that this Court has personal jurisdiction over NB&J, but none provide support for her allegation that all payments must be processed through a

---

[4] This Court agrees that NB&J has purposefully availed itself of the benefits of Maryland laws through its franchising agreement with Choice. See generally Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).

Maryland based system, but merely describe a system Choice provides to aid its franchisees in the reservation and marketing process. (Opp'n NB&J Mot. at 24; Franchising Agreement at 10, 20, ECF No. 31-2).[5] The franchising agreement contains no provision requiring payments to be processed in Maryland. Rather, it merely requires that NB&J pay a monthly royalty fee to Choice, which is calculated as a fixed percentage of the gross room revenue received by NB&J the preceding month. (See Franchising Agreement at 6, 25). Further, if, as Doe contends in her Complaint, Doe's trafficker primarily paid for these rooms in cash, such payments would not be processed in Maryland at all and have no connection to Maryland beyond forming a portion of the lump sum royalty payment made by NB&J. (See Compl. ¶ 42). Additionally, any of NB&J's knowledge that this benefit was the result of sex trafficking necessarily turns on what its employees observed at the Idaho hotel. (Compl. ¶¶ 78, 86). This Court finds Doe's allegations here do not go beyond routine business transactions of a typical franchising relationship, and do not sufficiently relate to NB&J's actions regarding sex trafficking, which largely occurred in Idaho. See Burger King Corp. v. Rudzewicz, 471 U.S. at 478 ("If the question is whether an individual's contract with an

---

[5] While the Court, in considering a motion to dismiss, "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor[,]" Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993), the court does not have to "credit conclusory allegations or draw farfetched inferences" in deciding jurisdictional disputes. Rao v. Era Alaska Airlines, 22 F.Supp.3d 529, 534 (D.Md. 2014). Furthermore, a court is permitted to consider evidence outside the pleadings when resolving a Rule 12(b)(2) motion. Structural Pres. Sys., LLC v. Andrews, 931 F.Supp.2d 667, 671 (D.Md. 2013). As such, this Court can consider the model franchising agreement submitted by both parties as part of its jurisdictional analysis.

out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot").

Doe next argues that the hotel venture which forms the basis of her § 1595(a) claim against NB&J is the same hotel-operating venture which forms NB&J's jurisdictional contacts. (Opp'n NB&J Mot. at 24). Doe argues "NB&J is liable because of actions taken as part of its hotel-operating venture with Choice[,]" which included "renting rooms to traffickers and operating the subject Sleep Inn in a way that facilitated trafficking." (Id.). The Court finds such arguments unavailing. The actions which Doe alleges NB&J performed as part of this venture by their very nature occurred in Idaho and do not have a connection to Maryland. NB&J rented the rooms to Doe's traffickers in Idaho. (Compl. ¶ 84). Further, any negligent operation of the hotel to facilitate trafficking necessarily occurred at the hotel in Idaho. (Id. ¶ 83).

Finally, Doe argues NB&J's participation in this hotel venture occurred partly in Maryland. (Opp'n NB&J Mot. at 25). Doe cites to numerous actions it argues NB&J performed in Maryland, including acting under "numerous detailed policies and procedures on topics directly relevant to the cause of action here[,]" reporting suspected trafficking to Choice in Maryland, and using Maryland based tools to participate in the venture. (Id. at 25). Many, if not all these identified actions, however, all necessarily occurred in Idaho. The mere fact that Choice unilaterally established policies for all its franchisees in Maryland which NB&J was obligated to follow does not show that NB&J took any action related to Doe's cause of action in Maryland. See Rush v. Savchuck, 444 U.S. 320, 332 (1980) ("The requirements of International Shoe, however, must be met as to each

8

defendant over whom a . . . court exercises jurisdiction."). As such, Doe provides no action or omission taken by NB&J in Maryland sufficient to show her cause of action arises out of or relates to NB&J's Maryland contacts, and Doe has not made the required showing to support the exercise of personal jurisdiction as to prong 2 against NB&J.

In summary, the Court concludes that Doe fails to demonstrate that her claims against NB&J arise out of or relate to NB&J's Maryland contacts as required for the exercise of specific personal jurisdiction, and the Court need not address whether the exercise of personal jurisdiction would be constitutionally reasonable. The Court therefore lacks personal jurisdiction over Defendant NB&J, although it notes, as discussed above, that Defendant Choice Hotels does not dispute that it is a resident of Maryland and thus is subject to this Court's general jurisdiction (Choice Mot. at 14). In any event, although this Court lacks personal jurisdiction over NB&J, one of the defendants in this case, the Court will nevertheless consider venue and transfer because, importantly, "[a] district court has the power to transfer venue under § 1404(a) even if it lacks personal jurisdiction over the defendants in the action." Oeste v. Zynga, Inc., No. GLR-20-1566, 2021 WL 1785139, at *1 n.1 (D.Md. May 5, 2021) (quoting Starks v. Am. Airlines, Inc., 368 F.Supp.3d 866, 869 (D.S.C. 2019)). As a result, the Court will next consider venue and finally turn to the issue of transfer.

B.  **Motions to Dismiss for Improper Venue**[6]

The Court will next consider Defendants' Motion to Dismiss. (Choice Mot. at 13–19; NB&J Mot. at 28–29). Both Defendants Choice and NB&J ask this Court to dismiss Doe's Complaint for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. Defendants argue venue is improper under 28 U.S.C. § 1391(b) because not all defendants are residents of Maryland and all relevant events occurred in the District of Idaho. (Choice Hotels Mem. L. Supp. Mot. Transfer or Dismiss ["Choice Mot"] at 2, ECF No. 12-1; NB&J Mot. at 28–29). While the Court will analyze these arguments in turn for the sake of completeness, as discussed below, it declines to rule on whether venue is proper in Maryland because it will ultimately transfer this case.

1. **Standard of Review**

Federal courts are empowered to dismiss or transfer a case if venue is improper in the plaintiff's chosen forum. Fed.R.Civ.P. 12(b)(3). "In this circuit, when venue is challenged by a motion to dismiss, the plaintiff bears the burden of establishing that venue is proper." Jones v. Koons Auto., Inc., 752 F.Supp.2d 670, 679 (D.Md. 2010). To survive a motion to dismiss or transfer under Rule 12(b)(3), the plaintiff must only make a prima facie showing that venue is proper. See Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004). As with a motion to dismiss for lack of personal jurisdiction, "in deciding a motion

---

[6] Ordinarily this Court would dismiss a defendant after finding it cannot exercise personal jurisdiction over it. Because this Court, however, will ultimately transfer the case in its entirety to the United States District Court for the District of Idaho, which has general jurisdiction over defendant NB&J, (Compl. ¶ 21), the Court will decline to dismiss NB&J at this stage of the litigation.

to dismiss [for improper venue], all inferences must be drawn in favor of the plaintiff, and the facts must be viewed as the plaintiff most strongly can plead them." Three M Enters., Inc. v. Tex. D.A.R. Enters., Inc., 368 F.Supp.2d 450, 454 (D.Md. 2005) (internal quotation marks and citation omitted). When venue is improper in a plaintiff's chosen forum, the court may dismiss the case or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

2. Analysis

Venue can be established in two different ways. First, venue is proper "in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1). An "entity" such as NB&J "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2). Because NB&J is not subject to this Court's personal jurisdiction and therefore does not "reside" in this district, Doe cannot establish venue under § 1391(b)(1).

Second, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Here, while Doe's claims against NB&J turn almost exclusively on acts or omissions in Idaho, her claims against Choice relate to its conduct in Maryland and its policies governing its franchisees, which are established in Maryland. See In re Hotel TVPRA Litigation, 2023 WL 3075851, at *17 (S.D.Ohio Apr. 25, 2023) ("[I]t is reasonable to conclude that the series of decisions that could result in [Hotel Franchisors'] liability under 18 U.S.C. § 1595(a) were made where

11

the executives were located" constituting a substantial part of the events or omissions for venue.). As such, venue is likely proper in Maryland under 28 U.S.C. § 1391(b)(2), but just as Judge Chuang determined in a similar case, (see Jane Doe (J.S.H.) v. Choice Hotels Int'l, Inc., No. 24-1598-TDC, 2025 WL 2108792, at *10 (D.Md. July 28, 2025)), this Court need not reach an ultimate conclusion on this issue because, as discussed below, transfer to the District of Idaho is warranted under 28 U.S.C. § 1404(a).

C.      **Choice Hotel's Motion to Transfer Venue**

The Court will next address Choice Hotel's Motion to Transfer Venue. Choice asks this Court to transfer this case to the District of Idaho under 28 U.S.C. § 1404(a). (Choice Mot. at 19). Choice argues this Court should provide Doe's choice in venue little deference because she is not at home in Maryland and all the relevant witnesses will likely be in Idaho. (Id. at 19–20). NB&J also asks this Court to "dismiss[] or transfer[] this case." (NB&J Mot. at 29). Doe, by contrast, contends her choice of venue is entitled to deference because the central facts of the lawsuit relate to Maryland, many of the relevant witnesses are in Maryland, and the interests of justice are best served by litigating in Maryland. (Pl.'s Mem. L. Opp'n Choice. Mot. Transfer ["Opp'n Choice Mot."] at 8, ECF No. 17). As explained below, the Court agrees with Defendants and will transfer this case to the District of Idaho for all further proceedings.

1. **Standard of Review**

Motions to transfer are governed by 28 U.S.C. § 1404(a). Courts in the Fourth Circuit "consider four factors when deciding whether to transfer venue: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3)

12

convenience of the parties; and (4) the interest of justice." Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015). In addition, "the transferee court must be a court in which the action could have been brought initially[.]" Dow v. Jones, 232 F.Supp.2d 491, 499 (D.Md. 2002) (citing 28 U.S.C. § 1404(a)). The burden is on the moving party to show, by a preponderance of the evidence, that transfer to another forum is proper. See Gilbert v. Freshbikes, LLC, 32 F.Supp.3d 594, 607 (D.Md. 2014). "Ultimately, '[t]he decision whether to transfer venue is committed to the sound discretion of the trial court.'" Hausfeld v. Love Funding Corp., 16 F.Supp.3d 591, 604 (D.Md. 2014) (alteration in original) (quoting Mamani v. Bustamante, 547 F.Supp.2d 465, 469 (D.Md. 2008)).

### 2. Analysis

The Court will first address Doe's Choice in Forum. Ordinarily in the Fourth Circuit, "[u]nless the balance of the factors 'is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Hausfeld, 16 F.Supp.3d at 604 (quoting Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984)). The weight accorded to a plaintiff's choice of venue "is lessened, however, when . . . the chosen forum is not the plaintiff's home[.]" Tse v. Apple Computer, Inc., No. BEL-05-2149, 2006 WL 2583608, at *2 (D.Md. Aug. 31, 2006). Here, Doe is not a Maryland resident, and as such her choice in forum is entitled to less deference than traditionally afforded. Id. While this case does have a substantial connection to Maryland in that it turns largely on allegations of corporate misconduct by Choice—a Maryland corporation—the trafficking at the center of this litigation took place in Idaho. Given the central allegations occurred in another district and

13

Doe is not a resident of Maryland, the Court finds this factor does not weigh against transfer.

The Court will next consider convenience of the witnesses. This Court has held that "[t]he convenience of the witnesses is 'perhaps the most important factor' in determining whether a transfer of venue should be granted." Mamani, 547 F.Supp.2d at 473 (quoting Cronos Containers Ltd. v. Amazon Lines, Ltd., 121 F.Supp.2d 461, 466 (D.Md. 2000)). This factor is meant to protect witnesses from unnecessary travel, expenditures of time, and expenses. Id. at 474. Here, Choice contends "[v]irtually all of the relevant witnesses—whether her alleged trafficker, hotel staff, knowledgeable law enforcement personnel, doctors, and other damages witnesses—are likely located in Idaho, where the alleged misconduct occurred." (Choice Mot. at 20). Doe argues Choice does not name specific witnesses who reside in Idaho. (Opp'n Choice Mot. at 33). However, "the Court need not stretch its senses to conclude that many witnesses will be travelling from" the location where the alleged trafficking took place. Eaglewood Consulting, LLC v. Graphic Packaging Int'l, Inc., No. 2:10CV125, 2010 WL 11470424, at *3 (E.D.Va. Oct. 25, 2010). The Court agrees with Choice that many non-party witnesses integral to Doe's proof of her trafficking and the Idaho hotel's knowledge are likely located in Idaho. As such, many of these witnesses would lie beyond this Court's subpoena power. See Fed.R.Civ.P. 45(c)(1) (stating that a subpoena "may command a person to attend a trial, hearing, or deposition only," when the proceeding will occur within 100 miles of where the person "resides, is employed, or regularly transacts business in person"). Accordingly, this factor weighs in favor of transfer.

The Court will next consider convenience of the parties. A "transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other." 15C Wright & Miller, Federal Practice and Procedure § 3849 (4th ed. 2008). While that is largely the case here, the Court nonetheless finds this factor weighs in favor of transfer. Here, Choice is headquartered in Maryland, and as such Maryland is a convenient forum for Choice. (Compl. ¶ 12). Both Doe and NB&J, however, are residents of Idaho. (Id. ¶¶ 9, 21). Further, all other named parties in this suit are residents of Idaho. (Id. ¶¶ 16–20). While transfer should not merely shift the burden from one party to another, as to "the convenience of the parties, it is undeniably more convenient for [Defendant] to have this case proceed in [the district] where its headquarters is located." E.E.O.C. v. FedEx Ground Package Sys., Inc., No. WMN-14-3081, 2015 WL 790500, at *2 (D.Md. Feb. 24, 2015). Because transfer would shift the burden from seven named parties to one corporate defendant, this Court finds this factor weighs in favor of transfer.

The Court lastly considers whether transfer is in the interest of justice. "This factor is amorphous and somewhat subjective, and allows a court to 'consider many things." Gennari Consulting, Inc. v. Wellington Corp., LLC, No. ELH-19-1851, 2019 WL 6829102, at *9 (D.Md. Dec. 13, 2019) (citation modified). "A significant factor in considering the interests of justice is avoiding duplicative litigation in courts, and the Court may appropriately consider the conservation of judicial resources and comprehensive disposition of litigation." Capitol Payment Sys., Inc. v. Di Donato, No. ELH-16-882, 2017 WL 2242678, at *14 (D.Md. May 23, 2017) (citation modified). The Fourth Circuit has stated that "two suits in different circuits involving a number of identical questions of fact

and law would result in a useless waste of judicial time and energy." Gen. Tire & Rubber Co. v. Watkins, 373 F.2d 361, 368 (4th Cir. 1967).

Here, as discussed above, this Court cannot exercise personal jurisdiction over NB&J. As such, the only way for Doe to proceed would be to file a separate suit against NB&J in Idaho. Having identical claims proceed in two different districts would be highly inefficient and counter to the interests of judicial economy. See Aphena Pharma Sols.-Maryland LLC v. Biozone Laboratories, Inc., 921 F.Supp.2d 309, 320–21 (D.Md. 2012) (holding the interests of justice strongly favor transfer to keep all defendants in a single case where the court did not have personal jurisdiction over one of three defendants). Further, the District of Idaho has an interest in deciding a dispute involving the conduct of two hotels located within its district and involving injuries to one of its residents. As such, the interests of justice strong favor transfer.

In summary, because Doe's choice in forum is not entitled to substantial weight, witness convenience favors transfer, and the interests of justice favor transfer, this Court will transfer this case in its entirety to the United States District Court for the District of Idaho under 28 U.S.C. § 1404(a).[7]

---

[7] The Court notes that Choice and NB&J also has a pending motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Given this Court's decision on the jurisdictional arguments, the Court declines to rule on 12(b)(6) arguments at this stage of the litigation to allow the proper forum to determine those issues.

## III. CONCLUSION

For the foregoing reasons, NB&J's Motion to Dismiss (ECF No. 30) and Choice's Motion to Transfer Venue or, in the Alternative, to Dismiss will be granted in part. The Court will transfer this case in its entirety to the United States District Court for the District of Idaho. A separate Order follows.

Entered this 1st day of August, 2025.

                                                /s/
                                 George L. Russell, III
                                 Chief United States District Judge