UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JANE DOE (J.L.K.) an individual,

Plaintiff,

v.

CHOICE HOTELS INTERNATIONAL, INC.; CHOICE HOTELS INTERNATIONAL SERVICES CORP.; GILL AND BANGA, LLC d/b/a QUALITY INN; LALI GILL, Individually; JASWINDER LAL, Individually; BALWINDER GILL, Individually; PALKUAR GILL, Individually; AND N B & J LLC d/b/a SLEEP INN,

Defendants.

Case No. 1:25-cv-00435-DCN

**MEMORANDUM DECISION AND ORDER**

## I. INTRODUCTION

Before the Court are Defendants Choice Hotels International, Inc. and Choice Hotels International Service Corp.'s (collectively, "Choice") Motion to Dismiss (Dkt. 41) and Defendant N B & J LLC d/b/a SLEEP INN's ("N B & J") Motion to Dismiss (Dkt. 69). Both motions assert Plaintiff Jane Doe has not sufficiently alleged plausible causes of action and seek dismissal of the Complaint. Jane Doe opposes both Motions. Dkts. 50, 72.

The Court held oral argument on June 8, 2026, and took the matters under advisement. Dkt. 81. Upon review, and for the reasons below, the Court GRANTS both Motions. However, the Court will allow Doe an opportunity to file an amended complaint.

## II. BACKGROUND

Plaintiff Jane Doe alleges she was trafficked over a decade ago—between January 2012 and December 2014—at two hotels in Boise, Idaho. One of those hotels was the Sleep Inn, owned and operated by N B & J.[1] Sleep Inn is a franchisee of Choice.

Doe has alleged three causes of action under the Trafficking Victims Protection Reauthorization Act ("TVPRA"): perpetrator liability against N B & J; beneficiary liability against both N B & J and Choice; and vicarious liability against Choice. Each Defendant has moved to dismiss the two claims against it (including the claim that overlaps between the two). Because the claims are substantially related and the Parties' arguments intertwined, the Court will discuss the two motions in tandem.

## III. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To state a claim for relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations;" however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

[1] The other hotel was the Quality Inn, owned and operated by Defendant Gill & Banga, LLC. This Defendant—and the named individuals associated with it—have not yet appeared.

reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principles" that underlie *Twombly.* First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept unreasonable inferences or legal conclusions as true. *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.* at 679.

Considering *Twombly* and *Iqbal*, the Ninth Circuit has summarized the governing standard as follows: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1988), or where the allegations on their face show that relief is barred for a legal reason, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In cases decided after *Iqbal* and *Twombly,* the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. ANALYSIS

Under the TVPRA, survivors may seek civil remedies against any person or entity who "knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act [of trafficking]"). *See* 18 U.S.C. § 1595(a).

To plead civil liability under the TVPRA, a plaintiff must satisfy one of two statutory pathways: (1) perpetrator liability—i.e., that the defendant itself violated 18 U.S.C. § 1591; or (2) beneficiary liability—i.e., that the defendant knowingly benefitted from participation in a venture that the defendant knew or should have known was engaged in conduct criminalized by 18 U.S.C. § 1591. *See* 18 U.S.C. § 1595(a); *A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205, at *2 (E.D. Va. July 22, 2020).

Section 1595(a) incorporates the criminal predicates defined in § 1591. In other words, a viable civil TVPRA claim requires factual allegations showing conduct that, if proven, would constitute "sex trafficking by force, threats of force, fraud, or coercion." 18 U.S.C. § 1591(a). Absent well-pleaded facts establishing the required force, coercion, fraud, commercial sex act, or knowing participation in a trafficking venture, a § 1595 claim cannot stand.

Here, Doe asserts liability pursuant to §1595, under both theories of perpetrator and beneficiary liability. However, as explained below, the Complaint fails to state a claim under either theory because Doe fails to plausibly allege any facts that would satisfy either § 1591's predicate elements or § 1595's beneficiary-liability requirements as applied to N B & J and Choice. Furthermore, Doe's claim for vicarious liability solely against Choice fails because such claims are not recognized under the TVPRA.

**A. Claim I - Perpetrator liability against N B & J**

To state a claim for perpetrator liability under the TVPRA, a plaintiff must plausibly allege the defendant: (1) recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized or solicited by any means a person; (2) knew or was in reckless disregard of the fact that force, threat, fraud, coercion or any combination of such means would be used; (3) to cause the victim to engage in a commercial sex act. 18 U.S.C. § 1591(a); *see also Treminio v. Crowley Maritime Corp.*, 707 F. Supp. 3d 1234, 1244 (M.D. Fla. 2023). Thus, Doe must allege N B & J knowingly harbored or maintained a person "with knowledge that fraud or force would be used to cause her to engage in a commercial sex act." *Doe v. Fitzgerald*, 2022 WL 2784805, at *4 (C.D. Cal. May 13, 2022).

N B & J argues Doe has not sufficiently pleaded it had actual or constructive knowledge of any trafficking. Under the circumstances, the Court agrees.

In her Complaint, Doe alleges, among other things, that there were "obvious signs" her traffickers were engaged in sex trafficking and "red flags" hotel staff should have observed and reported. Dkt. 1, at 26. For example, Doe claims staff observed cash payments, heavy foot traffic of men coming in and out of her room, her asking for clean sheets and towels multiple times a day, and other "unusual" behavior and patterns. *Id*. at 12, 29–30. Doe also claims numerous online reviews and articles detailed the sex trafficking at the Sleep Inn. *Id*. at 42.

The problem with Doe's last contention about online reviews is those reviews and news articles all came out *after* 2015. Thus, none of those materials can serve as any type

of constructive knowledge against N B & J.[2]

As for the other allegations, the Court cannot make the leap Doe wants it to make. While some of Doe's examples *could* support an inference of illegal sex trafficking, those same observations could indicate *consensual* sex work; or no sex work at all.

At most, Doe's claims suggest N B & J may have known of prostitution or commercial sex work, but not trafficking by force or fraud. As other courts have recognized, knowledge of prostitution is not equivalent to knowledge of trafficking as defined in 18 U.S.C. § 1591. *See A.B. v. Extended Stay Am. Inc.*, 2023 WL 5951390, at *6 (W.D. Wash. Sept. 13, 2023) (collecting cases that found allegations consistent with general commercial sex activity, but not rising to the level of sex trafficking, do not give rise to a TVPRA claim and explaining that, in cases that do state a claim, a plaintiff "typically alleges that they exhibited some external indicator of physical distress that would have been obvious to hotel staff"); *see also Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 472 (E.D.N.C. 2024) (stating that "knowledge of prostitution is not necessarily knowledge of sex trafficking by force or fraud as defined in 18 U.S.C. § 1591" and recognizing that the plaintiff failed to allege any signs of physical abuse or other allegations which would indicate that force or fraud was used).

Similarly, here, Doe has not alleged N B & J observed physical abuse, use of threat/force, or any other indicia of trafficking (e.g. signs of coercion). As such, she cannot

---

[2] Doe recognizes this, but asserts the information, nevertheless, buttresses the idea that sex trafficking was a well-known problem at the Sleep Inn. The Court understands the argument but will not consider evidence that came to light *after* the events in question to support the idea that Doe has sufficiently alleged any Defendant knew or should have known what was allegedly occurring at the time of the events.

plausibly establish constructive knowledge on the present allegations.

In briefing, Doe emphasizes that "willful blindness or deliberate ignorance suffices to satisfy the *mens rea* standard for perpetrator liability." Dkt. 72, at 12 (citing *United States v. Unpradit*, 35 F.4th 615, 625 (8th Cir. 2022)). Setting aside the non-binding nature of the citation, Doe has not presented factual allegations supporting the idea of any blindness or ignorance on the part of N B & J. To be sure, Doe has generically *alleged* N B & J was "blind" to what was going on at its hotel, but she has not provided any facts to support her conclusory allegations.

In short, Doe has alleged the elements of perpetrator liability, but that's it. She has failed, however, to support those allegations with any facts or specific instances of conduct the Court could reasonable conclude give rise to a plausible cause for relief. As a result of this failure, this claim must be dismissed.

**B. Claim II – Beneficiary liability against both N B & J and Choice**

To state a beneficiary claim under the TVPRA, Doe must plausibly allege that N B & J and Choice: (1) knowingly benefited, (2) from participating in a venture, (3) that venture violated the TVPRA, and (4) the defendant knew or should have known that the venture violated the TVPRA with respect to the plaintiff. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).

Doe claims Choice and N B & J "benefited from participating in ventures with traffickers . . . by maintaining an ongoing business relationship that facilitated the traffickers' illegal activities." Dkt. 50, at 3–4. Again, the Court finds this a bridge too far based on the *current* allegations.

The TVPRA does not penalize influencing some of the conditions under which sex trafficking is more or less likely to occur. *See A.D.,* 2020 WL 8674205, at *3 ("Under the plain language of the term 'participate,' the defendant-hotel must 'take part' in the sex trafficking venture."). And for good reason. There are many factors that, unfortunately, could impact the likelihood of sex trafficking. And, while some factors could be more apparent than others, Choice or N B & J did not "participate" in sex trafficking just because certain conditions of their general business operations may have made it more likely that sex trafficking could happen on their premises.

Particularly as applied to Choice, the idea of participation is a stretch. As outlined in the franchise agreements[3] between Choice and N B & J, Choice was several steps removed from the daily operations of the Sleep Inn. Thus, it cannot be said Choice "participated" in a sex trafficking venture. At most, some of the revenue derived from Sleep Inn renting rooms to the traffickers would have flowed upward to Choice. But that is insufficient to establish participation in an illegal trafficking venture. *See Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) ("[S]omething more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture.").[4]

---

[3] Doe claims the Court should not consider the franchise agreements because this is a motion to dismiss and the agreements were not attached to her Complaint. Even then, Doe herself references the franchise agreements in her complaint (Dkt. 1, at 6–7; 31–34), and in her current brief (Dkt. 50, at 5 n.10; 17–18). The Court "may [] consider documents whose contents are alleged in a complaint" or upon which the complaint "necessarily relies," even if they are not physically attached to the pleading, "so long as their authenticity is not contested." *Miesen v. Henderson*, 2017 WL 4270630, at *3 (D. Idaho Sept. 26, 2017) (citation modified). In short, the Court can consider the agreements even though this is a motion to dismiss.

[4] The TVPRA contemplates a venture in which, for example, "[a] motel operator and trafficker . . . work[] together 'to force [a plaintiff] to serve their business objective.'" *K.H. v. Riti*, 2024 WL 505063, at *4 (11th Cir. Feb. 9, 2024) (*quoting Red Roof*, 21 F.4th at 726). A legal "commercial venture" between a franchisor and franchisee is plainly different.

As for N B & J, Doe likewise fails to connect the dots between its conduct and any trafficking. Instead, Doe's Complaint relies on generalized allegations of sex trafficking in the hotel industry, N B & J's purported knowledge of such practices, and its financial benefit from room rentals. But these "facts" are essentially standard in the hotel industry and insufficient to establish participation in a trafficking venture as applied to Doe. *See, e.g.*, *Doe (S.M.A.) v. Salesforce, Inc.*, 2024 WL 1337370, at *13 (N.D. Tex. Mar. 28, 2024) (explaining the alleged participant must have an "ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction").[5]

Circling back to the theory of indifference or blindness, Doe alleges Choice and N B & J's failure to intervene and stop traffickers can qualify as participation for this claim. Not so. Absent some affirmative action supporting the traffickers—or clear inaction when knowledge of the traffickers was blatantly obvious—the Court cannot find participation. *See, e.g.*, *A.D.*, 2023 WL 2991042, at *4 ("The Complaint . . . fault[s] Defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture.").

[5] The facts of this case are a far cry from cases where the hotels were found to have been participants in the scheme. *See, e.g.*, *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247, 1253–54 (N.D. Ga. 2023) (holding a reasonable jury could find the participation element satisfied because employees played the role of lookout and notified traffickers when police were nearby or on the premises and the hotel's management, upon receiving complaints of prostitution, instructed employees to book suspected sex workers in rooms located in the back of the hotel where they would be less visible to guests); *I.R. v. I Shri Khodiyar, LLC*, 723 F. Supp. 3d 1327, 1337 (N.D. Ga. Mar. 18, 2024) (concluding that "a reasonable jury could find that [the] [d]efendant did much more than just rent rooms to sex traffickers and observe signs of trafficking," when employees visited trafficking rooms while sex buyers were present to ask whether the buyers needed anything; permitted victims to solicit sex in the front desk area of the hotel; bartered with victims for sex themselves; maintained a relationship with traffickers; and failed to act when they saw a plaintiff chained to a bed and the trafficker's name scrawled on the wall in blood).

Finally, Doe claims both Defendants mistakenly assert this claim must be dismissed because they did not know about *her* being trafficked. Doe claims this myopic view is misplaced as all she must show is that Defendants knew trafficking was occurring at their place of business. First, the Court does not read either Defendant's brief as focusing solely on its knowledge of Doe specifically. Second, and more importantly, however, as explained above, there are no allegations—beyond speculation and conjecture—to suggest either Defendant knew a trafficking venture was afoot in the first place, let alone that Doe herself was being trafficked. The Court is not, therefore, impermissibly requiring specific allegations as to Doe, but it *is* requiring specific allegations as to the crime of trafficking. And, again, it finds none have been presented. This claim must be dismissed.

**C. Claim III – Vicarious liability against Choice**

Choice avers there is no such thing as vicarious liability under the TVPRA. Citing the text of the statute, it concludes that, because vicarious liability is not mentioned, and the Supreme Court has cautioned against reading forms of secondary liability into federal statutes, this claim is dead on arrival. Dkt. 41-1, at 19 (*citing Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, 184 (1994)). Doe does not disagree the TVPRA is silent as to vicarious liability, but argues general agency principles should apply, and she can show an agency relationship between Choice and N B & J. Having drawn that connection, Doe asserts she can pursue this claim.

To begin, the Court is loath to recognize a claim that has, to date, *not* been recognized by the Ninth Circuit. The Court recognizes, however, that some *district courts* have recently begun to recognize such a claim. *See, e.g.*, *Doe (K.R.D.) v. Hilton Worldwide*

*Holdings Inc.*, 798 F. Supp. 3d 1082 (N.D. Cal. 2025).

Second, the franchisor/franchisee agreement between Choice and N B & J explicitly disclaims any type of agency relationship and illustrates Choice *did not* have a right to control the day-to-day operations of the Sleep Inn—a classic and indispensable aspect of an agency relationship. Dkt. 41-3, at 21. This situation stands in stark contrast to *Doe (K.R.D.)* where that district court found the "specific nature of the franchise relationship between the defendants provide[d] a plausible basis from which to infer an agency relationship." *Id*. at 1092.

In short, absent additional facts establishing an agency relationship, the Court finds there is no vicarious liability and must dismiss this claim as well.

**D. Statute of Limitations**

Finally, both Defendants claim most of Doe's claims are barred by the statute of limitations. Under the TVPRA, a victim has ten years "after the cause of action arose" to bring suit. 18 U.S.C. 1595(c)(1).

Doe alleges she was trafficked at the Sleep Inn at various times between January 2012 and December 2014. Doe filed her Complaint on December 30, 2024. Thus, only two days—December 30, 2014, and December 31, 2014—fall within the applicable ten-year statute of limitations. Defendants assert any claims based on sex trafficking that took place on or before December 29, 2014, are time-barred.

Doe first responds by noting that a motion to dismiss does not permit piecemeal dismissal of parts of a claim; the question is simply whether there are factual allegations sufficient for relief. The Court understands the general principle. However, it is also not

uncommon for the Court to narrow a claim based upon a statute of limitations so that discovery is appropriately tailored.

Doe next alleges the continuing violation doctrine should apply. The continuing violation doctrine is an exception to the discovery rule of accrual which allows a plaintiff to seek relief for events outside the limitations period "so long as the last act evidencing the continuing practice falls within the limitations period." *See Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (citation modified). Recognizing the Ninth Circuit has not definitively ruled on whether the continuing tort doctrine applies in TVPRA cases—and noting district courts within the Ninth Circuit are split on the issue—Doe nevertheless claims the Court should not find the statute of limitations began until "well after [her] trafficking ended" because she was under her trafficker's control and did not realize she was a victim until much later. Dkt. 72, at 15.

Doe also asserts equitable tolling could apply here. Equitable tolling requires a plaintiff to show: "(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstances stood in [her] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (citation modified).

The Court is sympathetic to Doe's plight. However, the statute is clear—ten years is the limitations period. Furthermore, while the matter is unsettled, the majority of district courts in the Ninth Circuit have found the continuing violation doctrine, equitable tolling, and the discovery rule *do not* apply to the TVPRA. *See Doe v. Jinbo, LLC*, 2026 WL 1261499, at *5 (D. Alaska May 7, 2026); *J.M. v. Red Roof Franchising, LLC*, 2025 WL 2410941, at *4–*6 (E.D. Cal. Aug. 20, 2025); *C.C. v. Rashid*, 2025 WL 1785273, at *5 (D.

Nev. June 26, 2025); *Doe v. G6 Hospitality, LLC*, 2025 WL 1167550, at *5 (W.D. Wash. Apr. 22, 2025).

In short, even if Doe had plausibly alleged the elements of a TVPRA claim—which, as noted above, she has not—any claims based on conduct occurring more than ten years prior to the filing of her complaint are time-barred. However, because it is possible Doe could allege facts supporting either of these legal theories, the Court will allow amendment.

## V. CONCLUSION

Doe repeatedly expressed concern that Defendants are asking the Court to weigh the facts and suggest the Court will not give proper credence to the honest allegations in her Complaint. *See, e.g.*, Dkt. 50, at 13. The Court is not weighing the evidence at this time. However, Doe's allegations are simply too generic and speculative to proceed. Assumptions about behavioral patterns or allegations Defendants should have drawn certain inferences from certain situations are not enough to state plausible causes of action—for claims that require a specific mens rea—under the TVPRA.

Simply put, there are no allegations at this time indicating Defendants were aware of any facts suggesting Doe was present on their property under duress. The Court recognizes the complicated psychological stress victims of sex trafficking face; the potential for threats, violence, or retaliation for speaking out. However, absent *some* indication that Defendants could readily ascertain Plaintiff was actually being trafficked, the Court cannot find Doe has stated a claim for relief under any of her three liability theories—perpetrator, benefactor, or vicariously. Additionally, absent facts specific to Doe, the Court cannot find that the continuing violation doctrine, equitable tolling, or the

discovery rule applies.

Defendants ask the Court to dismiss Doe's claims with prejudice. However, consistent with Ninth Circuit precedent and its standard practice, the Court will give Doe leave to amend because it is not clear her complaint could not be saved by amendment.

If she so elects, Doe may file an amended complaint in substantial conformance with the Court's analysis above, paying heed to specific, articulatable facts supporting each claim *and* an appropriate timeframe so that Defendants (and the Court) can ascertain whether there are sufficient facts to proceed into discovery *and* what the applicable timeframe should be, if any.

## VI. ORDER

1. Defendant Choice's Motion to Dismiss (Dkt. 41) is GRANTED.
2. Defendant N B & J's Motion to Dismiss (Dkt. 69) is GRANTED.
3. Doe has 30 days to file an Amended Complaint should she choose to do so.

DATED: August 25, 2026

David C. Nye
U.S. District Court Judge